# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JASON ALAN RAMSEY** | }<br>} |
| **Plaintiff,** | }<br>} |
| v. | }<br>} Case No.: 7:18-CV-01863 |
| **ANDREW SAUL, SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | }<br>}<br>}<br>} |
| **Defendant.** | } |

## **MEMORANDUM OPINION**

Plaintiff Jason Alan Ramsey ("Plaintiff") brings this action pursuant to Sections 216(i) and 223(d) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the parties' briefs, the court affirms the Commissioner's decision.

**I. Proceedings Below**

Plaintiff filed his application for disability insurance benefits on May 29, 2015, alleging that he became disabled on July 19, 2013. (Tr. 217-20). On October 15, 2015, the Social Security Administration ("SSA") denied Plaintiff's application. (Tr. 153-57). Plaintiff received a hearing before Administrative Law Judge Cynthia W. Brown ("ALJ") on July 13, 2017. (Tr. 118-39). In a decision dated January 8, 2018, the ALJ determined that Plaintiff had not been under a disability within the meaning of Sections 216(i) and 223(d) of the Act. (Tr. 101-17). The Appeals Council

denied Plaintiff's request for review of the ALJ's decision on September 26, 2018. (Tr. 35-41). That decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

**II. Facts**

Plaintiff was thirty-two years old on the alleged disability onset date. (Tr. 112). Plaintiff dropped out of school in the twelfth grade, but later obtained his GED. (Tr. 488). After completing two years of welding training, Plaintiff became a certified welder. (*Id*.). Plaintiff is married with no children. (*Id*.). His employment history includes work as an auto mechanic apprentice, maintenance mechanic, welder, automobile body repair technician, and a retail store manager. (Tr. 135-36, 236-37, 273). Immediately prior to filing for disability, Plaintiff was employed at Odom Chevrolet as an auto mechanic apprentice from January 2012 to July 15, 2013. (Tr. 122-23, 235, 273). Plaintiff alleges he suffers from the following disabling impairments: Rocky Mountain Spotted Fever; fatigue, chronic not controlled; generalized pain, chronic, not controlled; attention deficit disorder; COPD; bulging discs at L4 and L5; and anxiety. (Tr. 141, 235).

Plaintiff's earliest report of medical care occurred on May 23, 2013, where Plaintiff presented to Dr. Archie Hooper at Rush Medical Group. (Tr. 239). Dr. Hooper ordered a blood test for Rocky Mountain Spotted Fever, Lyme Disease, as well as blood and metabolic panels. (Tr. 239-40). On a follow-up appointment in June 2013, Dr. Hooper diagnosed Plaintiff with Rocky Mountain Spotted Fever, and prescribed doxycycline for fourteen days. (Tr. 406-10).

While Plaintiff does not allege a specific date of diagnosis for Generalized Anxiety Disorder (GAD) or attention deficit hyperactivity disorder (ADHD), Dr. Hooper reported as early as June 2013 that Plaintiff was taking Adderall and Xanax. (Tr. 407). Dr. Hooper further noted that Plaintiff was scheduled for an appointment with Dr. Jagani, an infectious disease specialist,

2

and recommended that Plaintiff follow up only if his symptoms persisted or worsened. (Tr. 405-07). On July 2, 3013, Dr. Jagani concluded that Plaintiff's symptoms were not related to Rocky Mountain Spotted Fever, and recommended Plaintiff get tested for hepatitis and HIV. (Tr. 342).

On July 19, 2013, Plaintiff presented to The Spine Care Center complaining of low back pain. (Tr. 314-22, 331). Dr. Wesley Spruill ordered an MRI scan of Plaintiff's lumbar spine. (Tr. 330, 339). The scan showed mild degenerative disc changes at L4 and L5, but "no significant appearing canal or foraminal narrowing." (*Id.*). Overall, Dr. Spruill described the scan results as "unremarkable." (*Id.*). Due to a positive urine drug screen, Dr. Spruill declined to write any prescription for Plaintiff. (Tr. 330, 339). No treatments were recommended, other than NSAIDs and physical therapy. (Tr. 339).

In January 2014, Plaintiff presented to Oncology Associates of West Alabama for evaluation of lymphadenopathy. (Tr. 357-62). Dr. Susan Bostick ordered a CT scan. (*Id.*). The exam revealed "no evidence of any type of malignancy or lymphadenopathy." (Tr. 362). Dr. Bostick did, however, find evidence of emphysema which "would [have been] unusual for a 33 year old." (*Id.*). Dr. Bostick prescribed a Pro-Air inhaler. (*Id.*). Additionally, Dr. Bostick gave Plaintiff 30 Norco for pain control as Plaintiff had earlier complained of joint pain. (Tr. 361-62). Plaintiff had previously been prescribed Norco from a "Med Center" physician. (Tr. 357).

In February 2014, Plaintiff visited Rush Medical Group, complaining of rib and back pain. (Tr. 428). Dr. Todd Vaughan, a physician at Rush Medical, found no evidence of chest, neck, or back pain, nor evidence of shortness of breath, or dizziness. (Tr. 428-29). Dr. Vaughan noted that Plaintiff reported years of chronic pain, "[a]chy in nature," but tests had always revealed normal results. (*Id.*). In regard to medication, Plaintiff reported he was doing well with no issues. (Tr. 428). Numerous laboratory tests failed to reveal any known problems. (Tr. 423, 425).

On referral from Dr. Bostick for COPD, Plaintiff presented to Dr. Aslam of Tuscaloosa Lung, Critical Care, and Sleep on March 3, 2014, complaining of chest pain. (Tr. 380-82). Plaintiff followed up on September 8, 2014. (Tr. 374-76). Since Plaintiff's last visit in March 2014 with Dr. Aslam, Plaintiff reported no new symptoms, nor any recent infection, while at the September 2014 appointment. (Tr. 374). Plaintiff had no recent emergency room visits or hospitalizations. (*Id.*). And, in regard to Plaintiff's respiratory condition, Dr. Aslam reported a normal chest appearance, normal breath sounds, no rales, no rhonci, and no wheezing. (Tr. 375).

In September 2015, Plaintiff underwent a physical conducted by Dr. Ronnie Chu, a consultative examiner. (Tr. 436-39). Dr. Chu reported that Plaintiff had a normal gait, no ataxia, and produced a negative straight raise. (Tr. 438). Plaintiff had no back spasms, no tenderness, and no deformity. (*Id.*). Dr. Chu noted Plaintiff's "[g]ood fine and gross motor movements." (*Id.*). Additionally, Dr. Chu noted that Plaintiff's range of motion measured within normal limits, including the range of motion of Plaintiff's lumbar spine, cervical spine, hips, knees, shoulders, elbows and forearms, ankles, wrists, and fingers. (*Id.*). Dr. Chu reported that that Plaintiff failed to take vitamins to combat Rocky Mountain Spotted Fever, which would "help him tremendously with symptoms." (Tr. 439). Dr. Chu cautioned Plaintiff against marijuana use "per drug screens in the past."[1] (Tr. 436, 439). Overall, Dr. Chu noted that Plaintiff had a normal exam, and opined that Plaintiff was not disabled. (*Id.*).

In July 2015, Plaintiff's wife completed a Function Report. (Tr. 255-64). The report provides that Plaintiff is able to get up in the morning, prepare a meal, attempt to complete chores, and drive. (*Id.*). Additionally, Plaintiff feeds and walks pets. (*Id.*). Plaintiff does not need special

---

[1] Dr. Spruill has reported a urine drug screen positive for marijuana, morphine, amphetamine, and hydrocodone. (Tr. 325, 330, 339).

reminders to take care of his personal needs, nor does Plaintiff need reminders to take medication. (*Id.*). Plaintiff's wife reports that Plaintiff can no longer fish or ride ATVs with friends. (Tr. 262).

On March 31, 2017, Dr. Vaughan ordered a CT scan. (Tr. 463). In comparing the 2017 CT scan to Plaintiff's most recent September 2014 CT scan, Dr. Vaughan noted that biapical pleural and parenchymal scarring had progressed slightly. (Tr. 463). The results showed no mass or lymphadenopathy that caused concern. (*Id.*). Dr. Vaughan reported Plaintiff's heart size was within normal limits, and no pleural effusions were present. (*Id.*). Generally, Dr. Vaughan noted some progression of the emphysematous changes when compared with the prior exam. (*Id.*). Dr. Vaughan advised Plaintiff that he "[m]ust stop smoking." (Tr. 467).

In regard to Plaintiff's alleged ADHD and GAD, Dr. Vaughan reported that Plaintiff was doing well on Xanax in March 2017. (Tr. 456). In general, Plaintiff's ADHD and GAD are both controlled by Adderall and Xanax. (Tr. 454-62).

### III. ALJ Decision

The Social Security Administration has established a five-part sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 4041520(a)(4)(i). Substantial gainful activity ("SGA") is defined as work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. 404.1520(c). An impairment or combination of

impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart Π, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite the claimant's impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the final part of the analysis, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity age, education, and work experience. 20 C.F.R § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given the residual functional capacity, age, education, and work experience. 20 C.F.R. § 1512(f). 404.1560(c).

The ALJ faithfully followed the established five-step sequential evaluation process in assessing whether Plaintiff was disabled. (Tr. 105-13). First, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since July 19, 2013, the alleged onset date. (Tr. 106). Second, the ALJ found that Plaintiff has the following severe impairments: Rocky Mountain Spotted Fever, fatigue, chronic pain syndrome (CPS), attention deficit hyperactivity disorder (ADHD), chronic obstructive pulmonary disease (COPD), lumbar spondylosis, emphysema, and generalized anxiety disorder (GAD). (Tr. 106). Third, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart Π, Appendix 1. (Tr. 107). In reaching this conclusion, the ALJ considered the severity of Plaintiff's mental impairments, both "singly and in combination," as well as whether "paragraph B" and "paragraph C" criteria were satisfied; the record did not support a finding that Plaintiff satisfied the criteria. (*Id.*).

In assessing the fourth step, the ALJ determined that Plaintiff could not perform his past relevant work as an auto mechanic apprentice, mechanic, welder, body repairer, or a retail store manager. (Tr. 112). But, the ALJ found that Plaintiff has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.157(b). (Tr. 109). Specifically, the ALJ determined that Plaintiff must work without concentrated exposure to fumes, odors, or pulmonary irritants, and without any exposure to hazards. (*Id.*). The ALJ also found that Plaintiff could understand, remember, and apply simple instructions, and attend to those for at least two-hour periods, and Plaintiff could also tolerate occasional interaction with the public and coworkers; changes in the workplace should occur no more than occasionally. (Tr. 109, 136). In making these findings, the ALJ considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence. (Tr. 109). Finally, the ALJ considered the testimony of a vocational expert, and found that there was other work that existed in significant numbers in the national economy and that Plaintiff could

perform based on his age, education, past work experience, and RFC. (Tr. 113). Because Plaintiff retained the ability to perform the work requirements of representative occupations, such as a merchandise price marker or a routing clerk, the ALJ found that Plaintiff was not disabled under Sections 216(i) and 223(d). (Tr. 113).

### IV. Plaintiff's Argument for Remand or Reversal

Plaintiff presents three arguments for review. Specifically, Plaintiff argues that (1) the ALJ's residual functional capacity assessment is not supported by substantial evidence; (2) the ALJ erred in not giving substantial weight to the opinion of a treating physician; and (3) the ALJ erred in failing to accurately consider the side effects of Plaintiff's medications. (Pl.'s Br., Doc # 14 at 2). The court addresses each argument, in turn.

### V. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. §405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## VI. Discussion

For the reasons explained below, the court finds that the Commissioner based her decision on substantial evidence and correct legal standards were applied. Accordingly, the ALJ's decision is due to be affirmed.

### A. The ALJ's Residual Functional Capacity Assessment ("RFC") Is Supported By Substantial Evidence.

Plaintiff argues that the ALJ's silence as to Plaintiff's alleged depression and chronic fatigue makes it "impossible" to determine whether substantial evidence supports the residual functional capacity assessment. (Pl.'s Br., Doc # 14 at 2-3, 5). The court disagrees.

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. In determining a claimant's RFC, the ALJ must base her findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments. 20 C.F.R. § 416.945(a)(3). The RFC represents the most an individual can do despite his limitations. *Id.* at 416.945(a). "In making the RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). Although the ALJ must consider all impairments, the ALJ is not required to refer to every piece of evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (stating that the ALJ need not "mechanically recite the evidence leading to her determination").

1. **Depression Diagnosis**

Contrary to Plaintiff's argument, the ALJ was not required to address Plaintiff's alleged depression. *See Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x 670, 671 (11th Cir. 2017) (finding ALJ had no obligation to investigate a claim that a plaintiff did not allege in her application for benefits, nor raise at her hearing before the ALJ). Here, Plaintiff failed to allege disability due to depression on his application for benefits in May 2015. (Tr. 141); *see Street v. Barnhart,* 133 F. App'x 621, 627 (11th Cir. 2005) (holding that the claimant's failure to raise a mental health issue as a basis for disability at the hearing "alone could dispose of his claim" because an administrative law judge is "under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996))*; Robinson v. Astrue*, 365 Fed. Appx. 993, 995 (11th Cir. 2010) (per curiam) (unpublished) (same). Similarly, Plaintiff did not allege he was disabled due to the depression at his July 13, 2017 hearing. Indeed, when asked whether any mental impairments were alleged, Plaintiff stated, "No, no mental."[2] (Tr. 122-25). In any event, a review of the record shows that the ALJ considered the severity of Plaintiff's mental impairments, both "singly and in combination," and determined that the impairments did not meet or medically equal the criteria of listing 12.06 and 12.11. (Tr. 107). Because substantial evidence supports that the ALJ based her findings on "all of the relevant medical and other evidence," the court finds no reversible error on this claim.

2. **Chronic Fatigue Diagnosis**

Also contrary to Plaintiff's argument, the ALJ properly considered the combined effects of Plaintiff's impairments, including chronic fatigue, when assessing Plaintiff's RFC. Plaintiff

---

[2] The ALJ later confirmed that no mental impairments were alleged, other than anxiety. (Tr. 135).

argues that there is "no mention" of chronic fatigue; however, the ALJ did, in fact, address fatigue. (Pl.'s Br., Doc # 14 at 3). Specifically, the ALJ noted that on two occasions Dr. Vaughan "found no fatigue."[3] (Tr. 111). The ALJ considered the entirety of Plaintiff's symptoms, in light of the reasonable, objective medical evidence, as well as opinion evidence. (Tr. 109). *See Sneed v. Barnhart*, 214 F. App'x 883, 887 (11th Cir. 2006) (ALJ satisfied duty to consider the combined effect of a claimant's impairments by stating that he considered whether the claimant suffered from any impairment or combination of impairments); *accord Jones v. Dep't of Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding the ALJ had given adequate consideration to the combination issue based upon a conclusory statement that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listen in Appendix 1"). Therefore, substantial evidence supports the ALJ's finding that Plaintiff has the residual functional capacity to perform a full range of light work.

### B. The ALJ Did Not Err in Not Giving Substantial Weight to The Opinion of the Treating Physician.

Plaintiff argues that the ALJ erred in failing to give substantial weight to the opinion of Plaintiff's treating physician, Dr. Todd Vaughan. (Pl.'s Br., Doc # 14 at 6). An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. "With good cause, an ALJ may disregard a treating physician's opinion,

---

[3] Dr. Vaughan found "no fatigue" on March 5, 2015 and on April 27, 2017 —only a month prior to Plaintiff's filing for DIB. (Tr. 111, 412, 415).

but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241; alteration in *Winschel*).

Here, the ALJ articulated two justifications for giving lesser weight to Dr. Vaughan's opinion: (1) Dr. Vaughan's opinion was inconsistent with his own records, and (2) the opinion was not "consistent with other objective evidence." (Tr. 111). Specifically, the ALJ explained that Dr. Vaughan noted Plaintiff reported years of chronic pain, yet tests "always revealed normal results." (Tr. 109). Numerous laboratory tests failed to reveal any known problems. (*Id.*). Dr. Vaughan's reports also show that Plaintiff could logically order his thoughts and conversation, Plaintiff's associations were intact, and Plaintiff's affect was appropriate with no confusion; such reports evidence "mild to, at most, moderate limitations" and do not provide a basis for disability. (Tr. 111). Because good cause exists for discounting Dr. Vaughan's opinion, this court cannot disturb that determination. *See, e.g., Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 823 (11th Cir. 2015); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–61 (11th Cir. 2004) (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence).

While a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, nothing prevents an ALJ from giving greater weight to the opinion of a non-treating source as long as the ALJ articulates good cause for allocating the weight in that way. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). Indeed, the Social Security regulations provide:

> Generally, we give more weight to medical opinions from your treating sources . . . . If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(c)(2) (emphasis added). Here, the ALJ gave "great weight" to Dr. Ronnie Chu, as it was Dr. Chu's "opinion [that was] consistent with the great weight of medical evidence." (Tr. 112). Plaintiff presented to Dr. Chu, a consultative examiner, in September 2015. (Tr. 436-39). Dr. Chu reported that Plaintiff had no back spasms, no tenderness, and no deformity. Records indicate that Plaintiff had a normal gait, no ataxia, and produced a negative straight leg raise. (Tr. 438). Moreover, Dr. Chu observed that Plaintiff's range of motion in his lumbar spine, cervical spine, hip, and knees were within normal limits. (Tr. 439). Overall, Dr. Chu noted that Plaintiff's exam was "normal." (*Id*.). Because good cause existed for discounting Dr. Vaughan's opinion, and the ALJ articulated sufficient reasons for allocating more weight to Dr. Chu, the court finds the ALJ did not err in assigning weight to be given to these physicians' opinions.

### C. The ALJ Properly Considered Plaintiff's Medication Side Effects.

Plaintiff next argues that the ALJ did not adequately consider the side effects of Plaintiff's medication. (Pl.'s Br., Doc # 14 at 10). Plaintiff's argument is without merit.

First, no objective medical evidence supports Plaintiff's claim that he suffered any alleged side effects, or that the medications caused any alleged side effects. Plaintiff appears to suggest that his medications cause fatigue and the need to lie down. (Pl.'s Br., Doc # 14 at 10-11). Specifically, Plaintiff cites to testimony during the July 2017 hearing that he lies down two to three times during the day, sometimes for 20 to 30 minutes at a time, and sometimes for several hours. (Pl.'s Br., Doc # 14 at 10). A contextual reading of this testimony, however, demonstrates that the

13

need to lie down is not a side effect of medication, but rather a method of dealing with pain.[4]  In fact, the only discussion of Plaintiff's medications during the hearing occurs where Plaintiff reports the medications "do help a good bit."  (Tr. 126).  Because Plaintiff does not explain what medication side effects he believes the ALJ failed to consider, and there is a lack of substantial evidence in the record to support this assertion, Plaintiff has not met the burden of showing his claim that the side effects of his medications make him unable to work is supported.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Walker v. Comm'r. of Soc. Sec.*, 404 Fed. Appx. 362, 366 (11th Cir. 2010); *see* 20 C.F.R. § 416.912(a) ("[Claimant] must furnish medical and other evidence that we can use to reach conclusions about [Claimant's] medical impairment(s).").

Plaintiff further alleges that Dr. Vaughan expressed concern regarding side effects.  (Pl.'s Br., Doc # 14 at 11).  But that allegation is off the mark.  Dr. Vaughan reports Plaintiff takes Adderall, Xanax, and Norco.  (Tr. 374, 399-402, 407, 407, 411, 455).  While Dr. Vaughan appears to have expressed a concern over Plaintiff's "complex" medical regimen, he did not state any concern about the side effects of the medications.  Dr. Vaughan merely asserts in conclusory fashion that the medications "make it difficult to function at the level he would need to hold employment."  (Tr. 453).  But there is no evidence in Dr. Vaughan's records to support such a contention.  Plaintiff has cited no records showing that a doctor expressed concern regarding any side effects; Plaintiff, therefore, has failed to meet his burden to show that side effects are part of her alleged disabling condition.  *See Werner v. Commissioner*, 421 Fed. Appx. 935, 938 (11th Cir. 2011) ("a claimant's failure to report side effects to her physicians is an appropriate factor for

---

[4] During the hearing, Plaintiff reported he experienced pain at a 6 or 7 level.  When asked by the ALJ what Plaintiff does to "try to deal with this pain," Plaintiff stated that he would lie down, and "try[] to relax." (Tr. 127).  Plaintiff further provided that he would lie down "maybe twice, three times a day." (Tr. 128).  A thorough review of the hearing transcript shows no mention of medication side effects.

14

the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record").

Plaintiff argues briefly that that any side effects could result in off task behavior of 10% or more in a typical workday. The significance of this, according to the Vocational Expert, would preclude all work. (Tr. 138). Plaintiff, however, fails to cite any objective medical evidence showing alleged side effects would have affected his ability to work.

Given Plaintiff's failure to provide objective medical evidence to support his allegations of side effects from medication, the ALJ was not required to make findings on the effect of medications and their alleged side effects. *See Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992); *see also Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) ("[I]f there is no evidence before the ALJ that a claimant is taking medication that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects."). Therefore, Plaintiff's arguments on the ALJ's failure to make findings on the effect of prescribed medications and their side effects are without merit.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be **AFFIRMED**. A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this February 28, 2020.

*/s/ R. David Proctor*
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE